Annette M. LITMAN, Plaintiff,

v.

**GEORGE MASON UNIVERSITY,**
Defendant.

No. CA–97–1755–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 7, 2001.

Annette M. Litman, Reston, VA, Pro se.

William E. Thro, Special Assistant Attorney General, Newport News, VA, for Defendant.

## *MEMORANDUM OPINION*

CACHERIS, District Judge.

Before the Court is an action brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), alleging that a state-controlled university's administration and faculty retaliated against a student for filing a discrimination complaint. Once again, the Court is presented with a novel question: whether the Supreme Court's recent decision in *Alexander v. Sandoval,* a Title VI case, bars the plaintiff's claim

for Title IX retaliation.[1] Defendant George Mason University has filed a Motion to Dismiss on that ground, and Plaintiff Litman has filed a Motion to Amend her 42 U.S.C. § 1983 claims. For the reasons stated below, the Court will grant the Motion to Dismiss and deny the Motion to Amend.

## I.

Plaintiff Annette M. Litman was a student at George Mason University ("GMU") for approximately one year, from mid–1995 until mid–1996, when GMU expelled her after a hearing. GMU is a state-created university "subject at all times to the control of the [Virginia] General Assembly." Va.Code Ann. § 23–91.24. Moreover, the parties agree that GMU is a recipient of federal education funding within the meaning of Title IX, 20 U.S.C. § 1681(a).[2] *See* 20 U.S.C. § 1687.

The Supreme Court has recognized that Title IX carries an implied private right of action, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), which permits students to recover damages for discriminatory conduct engaged in by their professors. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 75–76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Last year, this Court upheld Ms. Litman's private right of action to bring a Title IX retaliation claim. It is this proposition which GMU again challenges today.

In the recent case of *Alexander v. Sandoval*, 531 U.S. 1049, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the State of Alabama argued that there is no private right of action to enforce a disparate impact regulation promulgated under Title VI of the Civil Rights Act of 1964 ("Title VI"), and the Supreme Court agreed. The Court acknowledged that Congress has ratified *Cannon*'s holding that there is an implied private cause of action to enforce Title IX. *Sandoval*, 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1516; *see* 42 U.S.C. § 2000d–7; *Franklin*, 503 U.S. at 72, 112 S.Ct. 1028. For the first time, however, the Court limited that cause of action to enforcing rights actually articulated by Congress, not a federal agency. At the same time, the Supreme Court recognized but did not address the second issue raised by GMU, *i.e.*, whether an implied private cause of action against the States is inconsistent with the clear statement rule in *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 10, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), GMU has moved to dismiss Count II of the Complaint, which alleges retaliation in violation of Title IX, arguing that the Supreme Court's holding in *Sandoval*, by extension, bars enforcement by Ms. Litman of the anti-retaliation regulation passed pursuant to Title IX. Thus, GMU argues, the Court lacks subject matter jurisdiction over the retaliation claim. Ms. Litman has not filed a brief in opposition. GMU opposes Ms. Litman's Motion to Amend her Complaint.

## II.

The federal courts have original subject matter jurisdiction over any civil action "authorized by law to be commenced by

---

**1.** In *Litman v. George Mason University*, 131 F.Supp.2d 795 (E.D.Va.2001), this Court denied, on other grounds, GMU's motion for summary judgment on the Title IX count. *See id.* at 797 n. 3 (noting that the Supreme Court had recently heard oral argument in the case of *Alexander v. Sandoval* ).

**2.** This provision applies to "any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a).

any person ... [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights...." 28 U.S.C. § 1343(a)(4). A Rule 12(b)(1) motion to dismiss "raises the question of the federal court's subject matter jurisdiction over the action." 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure 2d § 1350 at 194 (1990). A party may raise the defense of the court's lack of subject matter jurisdiction at any time. *See Capron v. Van Noorden,* 6 U.S. (2 Cranch) 126, 2 L.Ed. 229 (1804); Fed. R.Civ.P. 12(h)(3). If, upon the suggestion of a party or *sua sponte,* the court determines that it lacks subject matter jurisdiction, it "shall dismiss the action." Fed. R.Civ.P. 12(h)(3).

The plaintiff has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991); Wright and Miller, § 1350 at 226. The court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* In passing on a motion to dismiss under Rule 12(b)(1), "the complaint will be construed broadly and liberally, ... but argumentative inferences favorable to the pleader will not be drawn." Wright and Miller, § 1350 at 218–19.

### III.

Like Title VI of the Civil Rights Act of 1964, which prohibits race discrimination, Title IX was passed pursuant to the Spending Clause. *See Gebser v. Lago Vista Indep. School Dist.,* 524 U.S. 274, 286–88, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). The Supreme Court has held that there is an implied right of action to enforce the substantive guarantees of Spending Clause

legislation. *See Cannon,* 441 U.S. at 694–99, 99 S.Ct. 1946. Congress intended that Title IX would be interpreted and enforced in the same manner as Title VI. *Cannon,* 441 U.S. at 696, 99 S.Ct. 1946. As is discussed below, the Secretary of Education has prohibited retaliation for filing a complaint of gender discrimination under Title IX.

In *Sandoval,* the Supreme Court considered whether the private right of action to enforce substantive guarantees in Title VI extended to disparate impact regulations promulgated pursuant to statutory authority. At issue in *Sandoval* was a state policy that driver's license examinations be administered in English. The source of the right being enforced proved to be an essential factor in whether an individual could enforce it: was the right found in the statute itself, or was it created by regulation (albeit a regulation authorized by statute and that effectuated the statutory rights)?

Key to the Supreme Court's analysis were analytical principles that prohibit courts from implying a private right of action that Congress has not permitted. As the Court stated:

Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.... The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.... Statutory intent on this latter point is determinative.... Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Sandoval,* 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1519 (citations omitted). The Court continued, "[w]e therefore be-

gin (and find that we can end) our search for Congress's intent with the text and structure of Title VI." *Id.* at 1520. Only the substantive rights contained in the statute itself can be enforced through a private right of action; rights created by agency regulation cannot. *Id.* at 1521. Thus, in Section 601 of Title VI, 42 U.S.C. § 2000d, which decrees that "[n]o person ... shall ... be subjected to discrimination" by a recipient of federal funding, the Court found specific, rights-creating language enforceable by a private right of action.[3] *Id.* By contrast, Section 602 provides that "[e]ach Federal department and agency ... is authorized and directed to effectuate the provisions of [§ 601]." *Id.;* 42 U.S.C. § 2000d–1. Pursuant to section 602, both the United States Department of Justice and the Department of Transportation promulgated regulations that forbade funding recipients from engaging in any activity having a disparate impact on racial groups. *Id.* at 1515; 28 C.F.R. § 42.104(b)(2); 49 C.F.R. § 21.5(b)(2). Because section 601 prohibits only intentional discrimination,[4] the Court concluded that the right to be free from disparate impact discrimination was solely a product of agency regulation, not the statute itself. *Id.* at 1517. Again, courts are not free to infer a private right of action to enforce a right not created by Congress. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Court therefore held that there is no private right of action, under Title VI, to challenge an activity that has a disparate impact on a racial group. *Id.* at 1523.

As noted above, Title VI and Title IX were both enacted pursuant to Congress's Spending Clause powers, share a similar statutory structure, and are often interpreted in a similar manner. *See Gebser,* 524 U.S. at 286–88, 118 S.Ct. 1989. Paralleling the structure of Title VI, Title IX contains a provision that creates the substantive right to be free from discrimination "on the basis of sex," 20 U.S.C. § 1681,[5] as well as a provision empowering federal agencies to "effectuate" the terms of section 1681, 20 U.S.C. § 1682.[6] Pursuant to the latter provision, regulations enacted in the Title VI context were incorporated by the Department of Education into Title IX. *See* 34 C.F.R. § 106.71. One of those regulations bars a recipient of federal funding from retaliating against a person who complains of gender discrimination in violation of Title IX. *See* 34 C.F.R. § 100.7(e).[7] The Fourth Circuit has recog-

---

**3.** *See Cannon,* 441 U.S. at 690 n. 13, 99 S.Ct. 1946 ("the right- or duty-creating language of the statute has generally been the most accurate indicator of the propriety of implication of a cause of action").

**4.** *Alexander v. Choate,* 469 U.S. 287, 293, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

**5.** This provision reads in part:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....

20 U.S.C. § 1681.

**6.** This provision reads in part:

Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, ..., is authorized and directed to effectuate the provisions of section 1681 of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken.

20 U.S.C. § 1682.

**7.** The regulation reads in part:

e) Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any

nized that the prohibition against retaliation is the product of a regulation, not contained in the statute itself. *See Preston v. Virginia ex rel. New River Community College*, 31 F.3d 203, 206 n. 2 (4th Cir.1994) (the Department of Education promulgated regulations pursuant to Title IX, including 34 C.F.R. § 100.7(e), which prohibits retaliation for filing discrimination claim).[8]

■ Although the Court lacks the benefit of a fully-developed legal argument from Ms. Litman, on July 30, 2001, after oral argument on the Motion to Dismiss, she delivered a letter to chambers in which she suggests that because Title VII's retaliation provision defines retaliation as a form of discrimination, the Court should, perhaps, properly view the prohibition on discrimination in Section 1681 as likewise encompassing retaliation.[9] In that event, the anti-retaliation regulation enacted pursuant to Section 1682 merely interprets Section 1681, rather than expanding its scope.[10]

For the following reasons, the Court rejects the suggestion that Title VII's definition of retaliation as a form of discrimination should guide the Court's interpretation of discrimination in the Title IX context. Title IX was enacted pursuant to Congress's Spending Clause power, while Title VII was enacted pursuant to its Commerce power. Whereas the provisions and regulatory schemes of Title IX and Title VI—both Spending Clause statutes—closely parallel each other, those of Title IX and Title VII do not.[11] The text of the Title VII retaliation provision is markedly different from that in Title IX and is therefore of limited usefulness in interpreting the Title IX retaliation provision. *See* 42 U.S.C. § 2000e–3(a).[12] Most obviously, Title VII's ban on retaliation is part of the statute itself, not contained in an effectuating regulation. In light of

---

individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.
  34 C.F.R. § 100.7(e).

**8.** *See also Lowrey v. Texas A & M Univ. System*, 117 F.3d 242, 248 n. 6 (5th Cir.1997) ("While retaliation is technically a form of employment discrimination, *it is not independently prohibited by the proscription against discrimination on the basis of sex* in federally-funded educational institutions, which is the heart of Title IX.").

**9.** In the same letter, Ms. Litman states that "[t]o be honest with this Court, I have never actually felt that the application of Title VII law in a one-to-one fashion to Title IX was sound or beneficial." July 30, 2001 Letter at 3.

**10.** Valid and reasonable interpretive regulations, which authoritatively construe the statute, may be enforced by a private right of action. *See Sandoval*, 531 U.S. at ——, 532

U.S. at ——, 121 S.Ct. at 1518, and cases cited therein.

**11.** *See Gebser*, 524 U.S. at 286, 118 S.Ct. 1989 (Title VI and Title IX "operate in the same manner, conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.... That contractual framework distinguishes Title IX from Title VII, which is framed in terms not of a condition but of an outright prohibition.") (citations omitted).

**12.** This section provides in pertinent part that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (West 2001). *Compare* the Title IX anti-retaliation regulation, 34 C.F.R. § 100.7(e), *supra* note 7.

*Sandoval,* this fact alone clearly differentiates a Title IX retaliation claim from a Title VII retaliation claim. The Court can be certain of Congress's intent only by examining the statute it enacted, not by perusing an agency's regulations, even though the regulations were promulgated pursuant to an effective delegation of authority and may, in some sense, "make effective the congressional purpose" expressed by a statute. *See J.I. Case v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). As the Supreme Court observed in *Sandoval,* its decision in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), made clear that the courts' task is to focus on what Congress actually said, not what the Court thinks it might have meant. 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1520. The Court thus focuses on the text of the respective statutes and finds no clear Congressional intent that Title VII's standards would apply to a Title IX claim by a student against a university, as Ms. Litman proposes.[13]

Title VII's anti-retaliation provision is worded very narrowly: while it defines retaliation as a form of discrimination, it "provides no remedy for retaliation against individuals who raise charges of noncompliance with the substantive provisions of Title IX." *Lowrey v. Texas A & M Univ. System,* 117 F.3d 242, 249 (5th Cir.1997).

Instead, it provides a remedy only for those who suffer retaliation after charging noncompliance with Title VII itself, *e.g.,* those who complain of discriminatory employment practices.[14] *Id.* The narrow wording of the Title VII prohibition implies that Congress sought to limit the scope of liability under the provision. This implication is furthered by the complex administrative scheme set up in Title VII—but not Title IX. A complaint filed under Title VII must pass through appropriate federal administrative channels before being brought in a court of law,[15] but a complaint filed under Title IX can be brought directly in the court system.[16] Congress thus defined discrimination more broadly in Title VII than Title IX, but it also imposed greater restrictions on an aggrieved party's right to bring suit.

The marked differences between both the statutory prohibitions and the administrative schemes created by Title VII and Title IX strongly weigh against expanding the scope of potential liability under Title IX for those receiving federal funds by interpreting "discrimination" to include retaliation, as under Title VII, when Congress did not clearly articulate such an understanding in the statutory text itself. Congress was aware that it could create a right of action for retaliatory treatment, and it did so in Title VII; it did not do so

**13.** The Court notes that while the Fourth Circuit has referred to Title VII in analyzing a claim of Title IX retaliation, *see Preston,* 31 F.3d at 206, it has also suggested that such reference may be appropriate only in the employment discrimination context. *Id.* Because Title VII, of course, addresses employment discrimination, such usage is more logical than using Title VII principles in the non-employment context of Title IX.

**14.** Ms. Litman has not complained of discriminatory employment practices by GMU; if she had suffered retaliation after complaining of such practices, she could have brought suit

under Title VII, which would have provided her a statutory right of action.

**15.** *See* 42 U.S.C. § 2000e–4 (creating Equal Employment Opportunity Commission ("EEOC") and § 2000e–5(b), (f) (stating that "[w]henever a charge is filed," the EEOC "shall" initiate an investigation; aggrieved party may bring suit only after the EEOC has first been given a chance to act upon the complaint)).

**16.** *See Cannon,* 441 U.S. at 694–99, 706 n. 41, 99 S.Ct. 1946.

in Title IX.[17] When Congress so clearly chose to limit the scope of Title VII's right of action for retaliation to Title VII complaints, and further to restrict court action on that right to claims that have been administratively exhausted, the Court is reluctant to extend the right (and the manner in which the courts have interpreted it) to the Title IX context.

Still, even without reference to standards developed in the Title VII context, the Court must consider whether some plain reading of "discrimination," as prohibited in Section 1681, might encompass "retaliation," as prohibited by the Department of Education pursuant to Section 1682. A comparison of the two claims provides an answer to the query by highlighting their differences. Section 1681 prohibits discrimination "on the basis of sex," which means a victim of discriminatory treatment must show she directly suffered harm from that discrimination and that her gender motivated the improper treatment. On the other hand, a claim of retaliation is fundamentally an assertion that one spoke out about discrimination *and was punished for speaking out.* The harm from retaliation is not a direct result of discrimination on the basis of sex but stems from the actions one took in response to the discrimination. In other words, the harm suffered by a victim of retaliation, while prohibited by the Title IX regulations, is not clearly prohibited by Title IX's text, because it does not result directly from unlawful discrimination *on the basis of sex.*

■ The Supreme Court in *Sandoval* could point to case law interpreting section 601 that showed the challenged regulation exceeded the proper scope of Title VI. The Court does not have the advantage of case law clearly establishing that "retaliation" does not fall within the plain scope of "discrimination." Usually, the Court would defer to the governing agency's interpretation of the scope of the statute. Administrative agencies' construction of statutes are entitled to deference, provided that their interpretation of the law does not conflict with congressional intent. *See, e.g., NLRB v. Town & Country Elec., Inc.,* 516 U.S. 85, 89–90, 94, 116 S.Ct. 450, 133 L.Ed.2d 371 (1995) (giving deference to NLRB's interpretation of National Labor Relations Act); *National R.R. Passenger Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 417, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) (stating that judicial deference to agency interpretation is a "dominant, well-settled principle of federal law"). The Court has found, however, that Congress did not clearly intend to create a private right of action for a claim of retaliation under Title IX. Therefore, because it exceeds Congress's intent, the agency's interpretation is not entitled to deference.

■ In short, 34 C.F.R. § 100.7(e) is a procedural provision detailing how to conduct an investigation, not a valid interpretation of 20 U.S.C. § 1681.[18] Thus, Ms. Litman's right to enforce the anti-retaliation regulation must come, if at all, from the independent force of section 1682. *Cf. Sandoval,* 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1519. In the aftermath

---

**17.** *Cf. Cannon,* 441 U.S. at 730, 99 S.Ct. 1946 (Powell, J., dissenting) ("As countless statutes demonstrate, including Titles of the Civil Rights Act of 1964, Congress recognizes that the creation of private actions is a legislative function and frequently exercises it. When Congress chooses not to provide a private civil remedy, federal courts should not assume the legislative role of creating such a remedy and thereby enlarge their jurisdiction.") (citations omitted).

**18.** Again, valid statutory interpretations may be privately enforced. *See supra* n. 10.

of *Sandoval,* the Court finds that section 1682 conveys no such independent right of action. Section 1682, like section 602 in the Title VI context, merely authorizes the agency to "effectuate" the rights guaranteed by section 1681; the operative language *Sandoval* found not to create a right of action to enforce the challenged Title VI regulation, language which is essentially identical in Title VI and Title IX,[19] likewise does not create a private right of action in this case. The implied private right of action to seek redress for harm suffered because of discrimination does not extend to harm suffered because of retaliation, because as the discussion above demonstrates, the anti-retaliation regulation is not merely an interpretation of Section 1681 but expands the scope of prohibited conduct. "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Sandoval,* 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1522 (*citing Touche Ross & Co. v. Redington,* 442 U.S. 560, 577, 99 S.Ct. 2479, 61 L.Ed.2d 82 n. 18 (1979)).

The Court notes that limiting the private right of action to enforcement of the statute's substantive provisions will not remove the incentive from federal funds recipients to protect federal civil rights in compliance with Title IX. Congress provided a strong incentive to entities receiving federal funds to comply with the directives of Title IX: failure to comply may lead to loss of federal funds. Agencies may also continue to enforce the statute and the anti-retaliation regulation against a funding recipient.[20] *See* 20 U.S.C. § 1682 (authorizing agency to enforce compliance with associated regulations by terminating funding or refusing to fund a program that is not in compliance, or "by any other means authorized by law").

In any event, the Supreme Court in *Sandoval* instructs this Court to consider only the "text and structure of Title [IX]." 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1520. To that end, as the discussion above demonstrates, reference to Title VII is useful insofar as it illuminates what Congress did *not* include in Title IX: an explicit statement that retaliation for exercising one's rights to be free from unlawful discrimination is itself a form of prohibited discrimination. The Court has not found any evidence that Congress intended the Title VII anti-retaliation standards to apply in the Title IX context.[21] Indeed, although most Circuits have referred, at least in some circumstances, to Title VII standards in interpreting Title IX, *see Preston,* 31 F.3d at 206 and cases cited therein, the applicable agency regulations make clear that Title IX and Title VII are "independent" of each other. *See* 34 C.F.R. § 106.6(a). In any event, even if the historical context supported the use of Title VII standards to make out a Title IX

---

**19.** Compare Section 602 of Title VI, which provides that "[e]ach Federal department and agency ... is authorized and directed to effectuate the provisions of [section 601]," 42 U.S.C. § 2000d–1, with Section 1682 of Title IX, which likewise provides that "[e]ach Federal department and agency ... is authorized and directed to effectuate the provisions of section 1681." 20 U.S.C. § 1682.

**20.** A question left open by the Supreme Court in *Sandoval,* and likewise not decided here, is whether an agency may permissibly enforce the regulations against a State entity.

**21.** *Contrast Cannon,* 441 U.S. at 694–698, 99 S.Ct. 1946 (observing that the legislative drafters of Title IX intended that it be enforced in the same manner as Title VI, and, in recognizing a private remedy under Title IX, relying upon an assumed awareness by legislators at the time they adopted Title IX that a private right of action had already been recognized under Title VI).

retaliation case, the Court is bound by the text of the statute, not Congress's unstated intentions.[22] "We have never accorded dispositive weight to context shorn of text." *Sandoval,* 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1520.

Nor does the fact that the regulation itself contains rights-creating language mean that it must be privately enforceable. A similar argument was made and rejected by the Court in *Sandoval,* where the Court observed that "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress." 531 U.S. at ——, 532 U.S. at ——, 121 S.Ct. at 1522. Because it exceeds the scope of section 1681, the regulation cannot of its own force create a right enforceable by Ms. Litman.

To summarize, although it specifically dealt with Title VI, the principles underlying the holding in *Sandoval* logically limit the scope of the private right of action to enforce Title IX. In the wake of *Sandoval,* the private right of action in such cases extends only to the substantive provisions contained in the statutes themselves, or to valid interpretive regulations. Thus, an individual may no longer bring suit to enforce effectuating regulations enacted pursuant to Title IX that expand the scope of prohibited discrimination. Ms. Litman alleges retaliation by GMU "for her complaints and her similar protected activities"—which is *not* discrimination *on the basis of her sex.* Verified Amended Complaint ¶ 322. The Court's "limited factual inquiry necessary for ruling on a 12(b)(1) motion," *Arthur Young & Co. v. City of*

*Richmond,* 895 F.2d 967, 969 (4th Cir. 1990), demonstrates that this claim does not meet the jurisdictional requirement of 28 U.S.C. § 1343(a)(4) that the cause of action be "authorized by law": even if true, her allegations indicate conduct which violates an effectuating regulation but is permissible under the plain language of the statute itself. Therefore, because the Court lacks jurisdiction to hear a claim brought by an individual plaintiff pursuant to Title IX's anti-retaliation regulation, Count II of the Complaint must be dismissed.

## IV.

Ms. Litman seeks leave to amend her 42 U.S.C. § 1983 claims. Pursuant to Federal Rule of Civil Procedure 15(a), once a responsive pleading has been served, a party may amend its complaint "only by leave of court or written consent of the opposing party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). In her initial Complaint, filed on October 31, 1997, Ms. Litman brought Section 1983 claims against GMU as well as two professors in their personal capacities. In two opinions in 1998, the Court dismissed the Section 1983 claims against GMU and one professor, while preserving only an equal protection claim against one of the professors. Mem. Op. of Jan. 22, 1998; *Litman v. George Mason Univ.,* 5 F.Supp.2d 366, 377 (E.D.Va.1998). The case then proceeded to the Fourth Circuit for resolution of a sovereign immunity issue. After remand, with the Court's consent, Ms. Litman filed a Verified

---

**22.** *Cf. Cannon,* 441 U.S. at 718, 99 S.Ct. 1946 (Rehnquist, J., concurring) ("Congress, at least during the period of the enactment of the several Titles of the Civil Rights Act tended to rely to a large extent on the courts to decide whether there should be a private right of action, rather than determining this ques-

tion for itself.... [However, it is] 'far better' for Congress to so specify when it intends private litigants to have a cause of action, [and] for this very reason this Court in the future should be extremely reluctant to imply a cause of action absent such specificity on the part of the Legislative Branch.").

Amended Complaint dropping the sole remaining Section 1983 claim but seeking to revive an already-dismissed Section 1983 claim. Such an amendment being beyond the scope of the Order allowing Ms. Litman to amend her Complaint, the Court dismissed the newly-reasserted claim. Mem. Op. of June 14, 2000, at 10.

■ Although she is now *pro se*, Ms. Litman was represented by counsel at the time she amended her Complaint. The Court recognizes that in most circumstances, amendment should be freely allowed. *See, e.g., Medigen of Kentucky, Inc. v. Public Serv. Comm'n of West Virginia*, 985 F.2d 164, 167–68 (4th Cir.1993). At this stage in the proceedings, however, the Court finds that further amendment would work prejudice upon the two professors who have been out of this case for some time and have a right to rely on the Court's prior adjudication of the claims against them. While the Court has the authority to revisit its earlier decisions, Ms. Litman has not demonstrated to the Court that its prior adjudications on the Section 1983 claims were clearly erroneous, or that the Court's failure to revisit the claims would work a manifest injustice on her. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Indeed, Ms. Litman acknowledges in her Motion to Amend that "the § 1983 counts have always been extraordinarily straightforward with respect to established law ..." Motion to Amend at 2.

Although the Court should be particularly solicitous of the *pro se* plaintiff who seeks leave to amend her Complaint, Ms. Litman is not the typical *pro se* plaintiff who appears in this Court. She has maintained her case without the aid of counsel for more than six months, during which time she has been responsible for a good number of the nearly 100 pleadings and other items recorded on the case's docket. Despite Ms. Litman's lack of formal legal training, the Court notes that her pleadings very often contain careful legal analysis, albeit not always with reference to case law and the rules of the federal courts and this District.

The Court therefore DENIES her Motion to Amend her Complaint with regard to her 42 U.S.C. § 1983 claims.

### V.

For the foregoing reasons, Defendant GMU's Motion to Dismiss Count II is GRANTED.[23] Plaintiff Litman's Motion to Amend with respect to the 42 U.S.C. § 1983 claims is DENIED. An appropriate Order will issue.

---

23. Because the case may be resolved on the basis of GMU's *Sandoval* argument, the Court does not consider the second ground raised in GMU's Motion to Dismiss, that is, whether there is a private right of action to bring a Title IX retaliation claim against a state university.