Mary MOCK; and Diana Cole, Plaintiffs,

v.

SOUTH DAKOTA BOARD OF RE-GENTS; University of South Dakota; Jack Doyle, acting in his official and individual capacities; Roger L. Ko-zak, acting in his official and individual capacities; and James W. Abbott, acting in his official and individual capacities, Defendants.

No. CIV. 00–4191.

United States District Court, D. South Dakota, Southern Division.

June 13, 2003.

Steven R. Jensen, Crary, Huff, Raby, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, Sioux City, IA, Martha Walters, Charles M. Zennache, Suzanne B. Chanti, Walters, Romm, Chanti & Dickens, Eugene, OR, for Plaintiff.

Robert B. Frieberg, Frieberg, Rudolph & Nelson, Beresford, Steven M. Johnson, Matthew T. Tobin, Johnson, Heidepriem, Miner, Marlow & Janklow, Sioux Falls, for Defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

Plaintiffs filed a Motion to Reconsider Ruling on Motion for Summary Judgment, Doc. 95. Defendants submitted a response in opposition. The Court will grant the motion to reconsider but adheres to the ruling in the Memorandum Opinion and Order, dated February 7, 2003, granting summary judgment in favor of Defendants on Plaintiffs' cause of action for retaliation under Title IX.

## BACKGROUND

The Court granted summary judgment in favor of Defendants on Plaintiffs' cause of action for retaliation under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* In finding that no cause of action for retaliation exists under Title IX, the Court relied on an Eleventh

Circuit case holding that there is nothing in the language or structure of 20 U.S.C. §§ 1681 and 1682 creating a private cause of action for retaliation. *See Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1348 (11th Cir.2002). The *Jackson* court reached its conclusion by applying the Supreme Court's recent decision in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) for determining whether a implied private cause of action exists from a statute.

The Court further relied on the case of *Litman v. George Mason Univ.*, 156 F.Supp.2d 579 (E.D.Va.2001) in rejecting the Plaintiffs' argument that prohibition of intentional discrimination in § 1681 implicitly includes a prohibition of retaliation because retaliation is a form of intentional discrimination. In *Litman*, the court explained that "[t]he harm from retaliation is not a direct result of discrimination on the basis of sex but stems from the actions one took in response to the discrimination. In other words, the harm suffered by a victim of retaliation, while prohibited by the Title IX regulations, is not clearly prohibited by Title IX's text, because it does not result directly from unlawful discrimination *on the basis of sex.*" 156 F.Supp.2d at 585 (emphasis in original). In addition, the *Litman* court compared the language of Title VII, which contains a statutory anti-retaliation provision, and Title IX and concluded that "Congress was aware that it could create a right of action for retaliatory treatment and it did so in Title VII; it did not do so in Title IX." 156 F.Supp.2d at 584–85. In the summary judgment opinion, the Court further noted that in addition to creating a statutory claim for retaliation in Title VII, Congress likewise enacted a statutory cause of action for retaliation under the Americans With Disabilities Act, 42 U.S.C. § 12203(a).

The Fourth Circuit recently issued an opinion finding that there is an implied private cause of action for retaliation under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *See Peters v. Jenney*, 327 F.3d 307 (4th Cir.2003). Because Title IX is modeled after Title VI, Plaintiffs contend that the Court should reconsider its decision on summary judgment and follow the Fourth Circuit's decision rather than the Eleventh Circuit's decision in *Jackson.* Defendants disagree and contend that the Court was correct in finding no cause of action for retaliation exists under Title IX.

## DECISION

▮ Title IX provides in relevant part that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Congress authorized certain governmental agencies "to effectuate the provisions of section 1681 ... by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." 20 U.S.C. § 1682. If an education program receiving federal financial assistance fails to comply with a requirement adopted pursuant to § 1682, the remedy for such noncompliance can include termination of or refusal to grant or continue federal financial assistance to that program as well as any other means authorized by law. *See id.* There are several procedural protections provided in the statute, however, before such remedies may be invoked against a noncomplying education program. *See id.*

■ Pursuant to the authority granted by 20 U.S.C. § 1682, the U.S. Department of Education, through the Office for Civil Rights, promulgated 34 C.F.R. § 100.7(e), which prohibits retaliation against any person who complains that an education program is not in compliance with Title IX:

> No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by [20 U.S.C. § 1681] or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

34 C.F.R. § 100.7(e) (2002).[1] As has been recognized by many courts, Titles VI and IX are *in pari materia*, such that cases interpreting Title VI and Title IX may be used interchangeably in analyzing similar issues under both titles. *See Jackson*, 309 F.3d at 1339; *Cannon v. University of Chicago*, 441 U.S. 677, 694–95, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

The Supreme Court has recognized that "a female employee who works in a federally funded education program is 'subjected to discrimination under' that program if she is paid a lower salary for like work, given less opportunity for promotion, or forced to work under more adverse conditions than are her male colleagues." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). The Eighth Circuit has recognized that "when a plaintiff complains of discrimination with regard to conditions of employment in an institution of higher learning, the method of evaluating Title IX gender discrimination claims is the same as those in a Title VII case." *Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th

Cir.1996). In addition, the Supreme Court held in *Cannon v. University of Chicago*, 441 U.S. 677, 688–89, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), that Title IX implies a private right of action in favor of direct victims of discrimination in any education program or activity receiving Federal financial assistance. Neither *Bell* nor *Cannon*, however, addressed the issue of whether a private right of action for retaliation exists for an individual who complains about Title IX violations.

In reaching the conclusion that Title VI allows a private right of action for retaliation, the Fourth Circuit began its analysis by stating that "the *Sandoval* Court held that 'regulations applying § 601's ban on intentional discrimination,' if valid and reasonable under the standard of *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), are enforceable in a private cause of action. *Sandoval*, 532 U.S. at 284, 121 S.Ct. 1511." *Peters*, 327 F.3d 307, 315. Thus, the *Peters* court framed the issue as:

> To determine whether there is a private cause of action for retaliation under Title VI, we must resolve the question of whether 34 C.F.R. § 100.7(e)'s retaliation prohibition is an interpretation of § 601's core antidiscrimination mandate. If § 100.7(e) is an interpretation of § 601 that is valid under *Chevron*, it commands deference and may be enforced via an implied private right of action. If instead, § 100.7(e) is a regulation which, even if valid as a § 602 "means of effectuating" Title VI, nonetheless "forbid[s] conduct that § 601 permits," *Sandoval*, 532 U.S. at 285, 121 S.Ct. 1511, namely conduct other than intentional discrimination, the regulation

---

1. While 34 C.F.R. § 100.7(e) was originally promulgated to enforce Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, it has been incorporated by reference to enforce Title IX. *See* 34 C.F.R. § 106.71.

may not be enforced via an implied private right of action.

*Id.*, at 316. The core difficulty with framing the issue in this manner is that in determining whether a statute implies a private remedy, the Court is directed by *Sandoval*, to look at Congress' intent from the text and structure of the *statute* not to an agency's *regulations* implementing that statute. 532 U.S. at 286–91, 121 S.Ct. 1511 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). Even if an agency seeks to enforce Title IX by prohibiting retaliation, the agency has no authority to create a private cause of action for such conduct.

■ The Fourth Circuit recognized that Title VI's antidiscrimination statute (42 U.S.C. § 2000d), which is identical in relevant part to Title IX's antidiscrimination statute (20 U.S.C. § 1681), does not include a "specific prohibition on retaliation apart from its general prohibition of racial discrimination." *Id.* at 316. But the *Peters* court held that failure to specifically include a prohibition on retaliation in the statute does not "lead to an inference that Congress did not mean to prohibit retaliation in [42 U.S.C. § 2000d], or that those who oppose intentional discrimination violative of [42 U.S.C. § 2000d] are not within the class for whose benefit Congress enacted that provision," because there was relevant precedent interpreting similarly worded antidiscrimination statutes that construed "discrimination" to include "retaliation." *Id.* The "relevant precedent" cited by the Fourth Circuit for this conclusion is *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (and cases that adopted the rationale in *Sullivan*), which the *Peters* court interpreted to stand for the proposition that "a prohibition on discrimination

should be judicially construed to include an implicit prohibition on retaliation against those who oppose the prohibited discrimination." *Peters*, 327 F.3d 307, 317.

One of the difficulties with this conclusion, however, is that the Supreme Court's decision in *Sullivan* and the later circuit decisions adopting *Sullivan* were decided *after* Congress enacted Title VI. Thus, it cannot be said that in enacting Title VI, Congress had in mind that courts would imply a cause of action for retaliation under Title VI based upon the Supreme Court's interpretation in *Sullivan* of a similarly worded antidiscrimination statute, 42 U.S.C. § 1982.

A second difficulty with this conclusion is that the Fourth Circuit does not address the inference of Congress' intent that can be drawn from Congress' explicit grant of a cause of action for retaliation in Title VII, 42 U.S.C. § 2000e–3(a), and Congress' failure to explicitly grant an cause of action for retaliation in Title VI, 42 U.S.C. § 2000d, when both Title VII and Title VI were enacted as part of the same act, the Civil Rights Act of 1964. The Eleventh Circuit in *Jackson* specifically addressed this inference and concluded that although the text and structure of Title VII is markedly different from Title IX (and therefore Title VI), "[n]onetheless, the fact that Congress felt required to prohibit retaliation expressly under Title VII may indicate that Congress did not intend the concept of 'discrimination' in Title IX to be read sufficiently broadly to cover retaliation." *Jackson*, 309 F.3d at 1345, n. 12; *see Litman*, 156 F.Supp.2d at 584–85 ("Congress was aware that it could create a right of action for retaliatory treatment, and it did so in Title VII; it did not do so in Title IX.").

A third difficulty with the Fourth Circuit's conclusion is that in the discussion following this conclusion it rejects the Supreme Court's approach to analyzing im-

plied private rights of action embodied in *Cannon*, 441 U.S. at 688, 99 S.Ct. 1946, and doesn't mention the Supreme Court's most recent approach to analyzing implied private rights of action embodied in *Sandoval*, 532 U.S. at 286–91, 121 S.Ct. 1511 in favor of the Supreme Court's 1969 decision in *Sullivan* and the Fourth Circuit's decision in *Fiedler v. Marumsco Christian Sch.*, 631 F.2d 1144, 1149 n. 7 (4th Cir. 1980), that "expressly held, not only that the analogous language of [42 U.S.C.] §§ 1981 and 1982 forbids retaliation for opposing the practices that those provisions prohibit, but also that a private right of action is available to those who engage in protected opposition under §§ 1981 and 1982." *Peters*, 327 F.3d 307, 317. In *Sandoval*, the Supreme Court clearly rejected the method in *Sullivan* for implying private rights of action. 532 U.S. at 287, 121 S.Ct. 1511. The method specifically rejected and quoted by the Supreme Court from *J.I. Case Co. v. Borak*, 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) is that " 'it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose' expressed by a statute." *Sandoval*, 532 U.S. at 287, 121 S.Ct. 1511. In *Sandoval*, the Supreme Court stated that it has "sworn off the habit of venturing beyond Congress's intent," and clearly rejected the rationale employed in *Sullivan* for implying a private right of action from a statute.

A fourth difficulty with the *Peters* court's conclusion is that it rejects in total the Eleventh Circuit's decision in *Jackson* by stating "[w]e note that the Eleventh Circuit's opinion in *Jackson* ... did not consider the impact of *Sullivan* and its progeny on the question that we decide today." *Peters*, 327 F.3d 307, 318, n. 10. While the Eleventh Circuit did not cite to *Sullivan*, it did address the issue of how the Supreme Court, prior to 1975, "implied private rights of action with a relatively

free hand," and how the Supreme Court's approach to analyzing private rights of action significantly changed after 1975 when *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) was decided. *Jackson*, 309 F.3d at 1339, n. 5. The Supreme Court has "gradually receded from reliance on three of [the] four factors [in *Cort v. Ash* ], focusing more and more exclusively on legislative intent alone." *Jackson*, 309 F.3d at 1339, n. 5 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) ("While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, what must ultimately be determined is whether Congress intended to create the private remedy asserted . . . .") (citations omitted); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (the "central inquiry" is "whether Congress intended to create, either expressly or by implication, a private cause of action"); *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) ("The intent of Congress remains the ultimate issue . . . .")). "*Sandoval* is the culmination of this trend, announcing that '[s]tatutory intent ... is determinative.' " *Jackson*, 309 F.3d at 1339, n. 5 (citing *Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511; *Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)). Thus, the Eleventh Circuit did not utilize the approach of determining whether a statute implies a private cause of action as did the Supreme Court in *Sullivan*, because it concluded that "*Sandoval* distills and clarifies the approach we are obliged to follow in determining whether to imply a private right of action from a statute." *Jackson*, 309 F.3d at 1338–39.

In summary, the Fourth Circuit's reliance on the Supreme Court's approach to

analyzing implied private rights of action embodied in *Sullivan* is prohibited by the Supreme Court's approach to analyzing implied private rights of action embodied in *Sandoval.* Because the Court finds that *Sandoval* is the proper approach to analyzing implied private rights of action and the Eleventh Circuit in *Jackson* properly applied that approach, the Court adheres to the prior decision adopting the Eleventh Circuit's holding that Title IX does not provide a private right of action for retaliation. *See Jackson,* 309 F.3d at1335. Accordingly,

IT IS ORDERED that the Plaintiffs' Motion to Reconsider Ruling on Motion for Summary Judgment, Doc. 95, is granted to the extent that the Court has reconsidered its ruling, but the Court adheres to the ruling in the Memorandum Opinion and Order dated February 7, 2003 granting summary judgment in favor of Defendants on Plaintiffs' cause of action for retaliation under Title IX.