Rosalind WELLS, Plaintiff,

v.

HBO & COMPANY, Defendant.

Civ. A. No. 1:87–CV–657–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 29, 1992.

Edward Lupo Savell, Savell & Williams, Atlanta, GA, Joseph H. Weiss, Office of Joseph H. Weiss, Jules Brody, Mark Levine, Stull Stull & Brody, New York City, for plaintiff.

Richard M. Kirby, Gregory Russell Hanthorn, Jones Day Reavis & Pogue, Atlanta, GA, Robert E. Zimet, Skadden Arps Slate, Meagher & Flom, New York City, for defendant.

## ORDER

CAMP, District Judge.

This action is before the court on four motions by plaintiff: 1) a motion to file a first amendment to the complaint [# 51–1], 2) a motion to add defendants [# 51–2]; 3) an unopposed motion to file this amendment under seal [# 52–1]; and 4) a motion to compel testimony.

This is a class action brought by the plaintiff on behalf of the buyers of HBO common stock during the class period, March 29, 1985 through April 20, 1986. This case was transferred from the Eastern District of New York in 1987. There was a nearly four-year stay on discovery on substantive issues pending class certifi-

cation, which this Court did on April 17, 1991.

Plaintiff's existing complaint alleges that HBO unlawfully inflated its earnings, and hence its stock value, by the accounting and disclosure methods it used with respect to a practice called "discounting". Both sides agree that discounting is a lawful practice. It allows a party who is to receive future periodic payments under a contract to sell the contract and its future stream of revenues for a discounted lump sum. Here, HBO sold its contracts to service hospital computer software for a lump sum.

The original controversy arose over the fact that HBO counted this lump sum as current income. This practice made its income for the current period higher, and for the later periods when it would have earned a steady stream of income correspondingly lower. Plaintiffs contend HBO should have treated this as a financing arrangement, borrowing money against future revenue, which would have made its current income lower. The existing complaint charges defendant with violating Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n, and SEC rule 10b–5, 17 C.F.R. § 240.10b–5.

Plaintiff points in her existing complaint to a number of specific statements that HBO made during the class period that she believes were false and misleading. On March 29, 1985, the start of the class period, HBO filed a form 10–K with the Securities and Exchange Commission. Complaint ¶ 14. This form included by reference HBO's 1985 annual report covering the 1984 calendar year. *Id.* at ¶ 15. This annual report stated that "HBO's accounting for revenue and income recognition is conservative ... Income accounting is also conservative." *Id.* The report provided figures for HBO's net income, service and fee revenue, earnings per share, and declared cash dividends, and provided rates of increase for these figures. *Id.* at ¶ 16. The annual report also stated:

We believe that growth rates in earnings per share of 25% to 30% can be achieved during 1985 and subsequent years. This

growth rate is somewhat in excess of the industry's overall growth rate. However, it reflects the rapidly expanding product lines of the new HBO & Company. *Id.* at ¶ 17. Notes to the report stated that HBO recognized revenue from service agreements "monthly, as billed, over the life of the agreement, beginning at the system installation date or in full on the date the contract is discounted." *Id.* at ¶ 18.

HBO also filed quarterly disclosure forms during 1985 describing revenue from service agreements, and another 10–K form in March, 1986. *Id.* at ¶¶ 19–22. The 1986 annual report incorporated in this 10–K form continued to describe revenues from discounting agreements. *Id.* at ¶ 23.

The class period ends April 20, 1986, the day before HBO announced it would stop discounting long-term service agreements. *Id.* at ¶ 24. In making this announcement, HBO stated that because it no longer would discount contracts, its earnings would be "sharply lower for the current year than in preceding years, and substantial volatility in earnings may be expected in the future." *Id.* at ¶ 24. Plaintiff alleges the price of HBO's common shares declined materially after HBO announced its change in revenue recognition policy.

Plaintiff alleges in her original complaint that these filings were false and misleading, and did not present fairly HBO's financial condition and the results of its operations, in four specific respects:

(a) Each of the filings failed to disclose that HBO's revenue and earnings for the respective periods were artificially inflated by revenue recognition policies that were, at best, problematic; that they may have to be discontinued; and that, if discontinued, would result in sharply lower earnings and substantial volatility in earnings;

(b) The 1985 Form 10–K and 1985 Annual Report misrepresented HBO's accounting for revenue and income recognition as conservative;

(c) The 1985 Annual Report failed to disclose that, particularly in view of its questionable revenue recognition policies,

HBO did not have a good faith or reasonable basis for its purported belief that growth rates in earnings per share of 25% to 30% can be achieved in future years; and

(d) The 1986 Form 10–K and the 1986 Annual Report failed to disclose that, particularly in view of its questionable revenue recognition policies, HBO did not have a good faith or reasonable basis for its assertion that future payments from systems installed or to be installed pursuant to service agreements provide the Company with a strong revenue base for the future.

*Id.* at ¶ 26.

Finally, Paragraph 27 of the complaint adds that HBO "knew or should have known throughout the Class Period that its filings did not present fairly the Company's financial position, the results of its operations, and the changes in its financial position for the respective periods."

Now, the plaintiff proposes to add to her 10(b) claim, and add two new state common-law claims. In essence, plaintiff claims that in addition to accounting wrongly for its discounting practice, HBO deferred recognizing expenses incurred in the first quarter of 1985 until the fourth quarter, and failed to note that HBO's new integration with other companies was not going as smoothly as expected. *See, e.g.,* Prop.Amd.Cmplt. at ¶ 48.

The amended complaint cites the same allegedly misleading statements as the original concerning revenues and earnings projections. It adds three Wall Street Journal articles, *id.* at ¶¶ 24, 27, and 30, and an additional earnings report, *id.* at ¶ 35, which it contends also were misleading or based on misleading information. The proposed amended complaint, unlike the original, contends that HBO's September, 1985 form 10–Q was misleading because it failed to include information concerning expenses incurred. *Id.* at ¶ 67(c).

Plaintiff wishes to amend her 10(b) claim to reflect this. Her two proposed common law state claims arise from the same underlying facts as the original and amended complaints, that is, the same statements

that allegedly misled buyers concerning discounting reporting methods and expense deferral. The first claim is for negligent misrepresentation, the second for common-law fraud. Plaintiff claims that she only learned of the new facts underlying the supplemented claim recently, upon discovery.

Plaintiff also proposes to add four individuals as defendants in her action. Two, James Napier and John Lawless, each served as president and CEO of HBO during parts of the class period. A third, Walter Huff, was Chairman of the Board of HBO during the class period, and the fourth, Joseph Blesser, was HBO's Controller and Chief Accounting Officer.

With respect to these proposed individual defendants, the proposed amendment adds allegations concerning stock sales made by the added defendants. *Id.* at ¶ 65. It notes that HBO's 10–Q for the first three quarters of 1985 contained an address to the shareholders signed by Napier, and that Blesser signed the third quarter form 10–Q. All four defendants signed the 1985 10–K. ¶ 36.

## DISCUSSION

Rule 15 of the Federal Rules of Civil Procedure allows plaintiffs to amend their complaints after 20 days of service by leave of the court. The Supreme Court has commanded that "leave to amend shall be freely given when justice so requires." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Borden, Inc. v. Florida E. Coast Ry. Co.,* 772 F.2d 750, 757 (11th Cir.1985) ("There is a strong policy embodied in the Federal Rules of Civil Procedure, and Rule 15 particularly, favoring the liberality of amendment."). However, if an amendment would be futile, a court need not allow it. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Homes by Michelle, Inc. v. Federal Savs. Bank,* 733 F.Supp. 1495, 1501 (N.D.Ga. 1990) (court may deny leave if amended complaint subject to dismissal) (citing *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981)).

The defendant argues the amendment would be futile for two reasons. First, it contends that nearly all the additional material in the proposed amended complaint is time barred. Second, with respect only to the state law claims, it contends that the plaintiff cannot show that she relied on defendant's representations, and that under Georgia law reliance is an essential element of her claims.

## A. The New 10(b) Allegations

Six years and two months elapsed between the end of the class period and the time plaintiff sought leave to amend her complaint. Unless the proposed amendment "relates back" to the original complaint, see Fed.R.Civ.Proc. 15(c), then plaintiff may encounter statute of limitations problems.

■ Under Rule 15(c), an amendment relates back to the date of the original pleading when the claim asserted in the amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." (The test for the relation back of amendments adding parties is discussed below.) The rationale of this rule is that once a party has been notified of litigation concerning a particular occurrence, she has received all the notice that statutes of limitations require. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n. 3, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984) (per curiam). Thus, although a plaintiff need not set forth in detail the basis of his claim for relief, she must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also* 6A Charles Alan Wright et al., Federal Practice & Procedure § 1497 at 87–89 ("A failure of notice will prevent relation back") (1990).

■ Although it is easy to state this rule, it is often difficult to apply it. In marginal cases, of which there are many, the inquiry tends to become quite fact specific. Whether the amended complaint would arise out of fraudulent acts occur-ring at the same time as the fraudulent acts in the original complaint is at least one factor to consider. *See Hunt v. American Bank & Trust Co.*, 783 F.2d 1011, 1014 (11th Cir.1986) (amendment concerning different incident time-barred). In one recent securities fraud case, the original complaint alleged that a company failed to tell investors in a particular news announcement that a major shareholder was pressuring it to use method X instead of method Y for distributing money to shareholders. *Fry v. UAL Corp.*, No. 90–C–0999, 1992 WL 177086 (N.D.Ill. July 23, 1992) at *15–16. In the amended complaint, plaintiffs charged the company also failed in this same announcement to inform the market it had failed to research the tax consequences of method Y. The court held that the amendment did relate back, because the original complaint at least put UAL on notice that its decision to choose X instead of Y would be challenged, and the original complaint at least mentioned tax implications.

■ Here, plaintiff argues that her amended complaint attacks precisely the same filings as the original. Indeed, it attacks the same statements in those filings—for example, HBO's statement that it expected earnings growth rates of 25% to 30% per year, and HBO's assertion that HBO's accounting for revenue and income recognition is conservative. The amended complaint simply states another reason those statements falsely inflated the value of HBO's stock in violation of 10(b).

If the filing of particular misleading statements is the "conduct, transaction, or occurrence" at issue here, the plaintiff's argument is compelling. On the other hand, unlike *Fry*, plaintiff's original complaint gave no hint that it challenged HBO's reporting procedures or earnings estimates on any basis other than discounting. Each of the filings HBO provided the SEC was a very complex document. Many different pieces of information went into creating them. Even particular statements, such as an earnings projection, derived from many different sources. Simply because HBO had notice that plaintiff ob-

jected to one particular problem with its statements does not mean HBO had notice of other problems.

On balance, the Court believes that the proposed amended complaint does arise from the same transactions as the original complaint—the making of particular statements in particular filings that allegedly were misleading. For the most part, the plaintiff bases her amended complaints on the same allegedly misleading filings, and statements within those filings, as the original. The original complaint at least put HBO on notice that the plaintiff believed these statements had falsely inflated the value of its stock. And, paragraph 27 of the original complaint reads like a general averment that HBO's filings did not fairly represent the value of the company. This could to some extent have alerted HBO to the possibility that, at least following discovery, the specific statements in the filings might appear to have inflated HBO's stock value for other reasons (but see the following discussion of Rule 9(b)). Although the amended complaint derives partly from a different course of conduct by the defendant, it does challenge the same occurrences—the making of particular misleading statements.

■ Defendant points out that the Court should consider the interrelation between Federal Rules of Civil Procedure 15(c) and 9(b). Rule 9(b) requires that "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule serves to alert defendants to the "precise misconduct with which they are charged" and protects them from "spurious charges of immoral and fraudulent behavior." *Durham v. Business Mgt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988) (citation omitted). Rule 9(b) also helps "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed." *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir.1985) (citing

*Elster v. Alexander*, 75 F.R.D. 458, 461 (N.D.Ga.1977) (Moye, J.)). The rule applies to actions under Section 10(b) and Rule 10b–5. *See, e.g., Bank v. Pitt*, 928 F.2d 1108, 1113 (11th Cir.1991); *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1297 at 613 (1990) (noting trend toward more demanding application of Rule 9(b) in securities fraud actions).

■ Rule 15(c) serves to ensure that amendments relate back only if the original pleading gave adequate notice of the subject of the amendment; Rule 9(b) requires that a defendant receive heightened notice of a fraud claim. Thus the defendant here argues that the Court should read the same conduct, transaction, or occurrence requirement of Rule 15(c)(2) especially narrowly in fraud cases.

This is an interesting argument. Defendants have not, however, cited any authority for it and the Court has not found any. Under these circumstances, the Court is inclined to reject it. Where both the original and the amended pleadings each independently meet the requirements of Rule 9(b), which is the case here,[1] the goals of Rule 9(b) are largely protected. Rule 15(c) states flatly that amendments relate back if they arise out of the same conduct, transaction or occurrence as the original complaint. Having found here that the amended complaint does arise out of the same conduct, occurrence or transaction as the original, the Court would be hard-pressed to say in spite of this fairly clear language that the amended complaint does not relate back to its predecessor.

### B. The Additional Parties

■ Relation back is the critical issue here, and Rule 15(c) again provides the test. In the case of amendments adding parties, however, Rule 15 adds an additional prerequisite for relation back not applied to other sorts of amendments. An amendment adding a party only relates back if

---

**1.** The Eleventh Circuit has stated that "[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham*, 847 F.2d at 1512 (emphasis in the original) (citations omitted).

that party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed.R.Civ.Proc. ˙15(c)(3)(B).

It is true that the Eleventh Circuit has sometimes read the "mistake" requirement in Rule 15(c) "liberally." *Itel Capital Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1258 n. 9 (11th Cir.1983) (citing *Taliaferro v. Costello*, 467 F.Supp. 33, 36 (E.D.Pa. 1979)). In *Taliaferro*, the district court asserted that the "mistake" requirement of 15(c) seemed simply designed to ensure that the new defendant knew that his joinder was a distinct possibility. 467 F.Supp. at 36. *But see Rylewicz v. Beaton Servs., Ltd.*, 888 F.2d 1175, 1181 (7th Cir.1989) (ignorance of proper party is not mistake concerning identity); *Antinore v. Alexander & Alexander Servs., Inc.*, 597 F.Supp. 1353 (D.C.Minn.1984) (no mistake where securities buyers did not claim they brought the original claim against the wrong parties); *cf. Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 746 F.Supp. 40, 43 n. 3 (D.Kansas 1990) (noting diverging authority).

■ However, even the most liberal interpretation of "mistake" cannot include a deliberate decision not to sue a party whose identity plaintiff knew˙ from the outset. *See Keller v. United States*, 667 F.Supp. 1351, 1357–58 (S.D.Cal.1987) (no mistake where party knew before statute of limitations period expired that it could name defendant but did not) (citing *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853 (9th Cir. 1986)). Here, plaintiff's counsel admitted at oral argument that the plaintiff could have joined in the original complaint the HBO officers she now seeks to add by amendment. The Court has some sympathy for the plaintiff's argument that she must steer a course between naming individuals in 10(b) actions prematurely and risking sanctions, and naming them too late and having an action foreclosed by the statute of limitations. But Rule 15(c) plainly provides that potential defendants are

entitled to repose after a certain period unless they know they have escaped suit only by mistake.

Even with respect to the "conduct, occurrence, or transaction" test, the case for relation back of the amendments adding parties is weaker. The original pleading did not place defendants' signatures or stock purchases directly at issue. The plaintiff certainly knew about these, or could have discovered them, years ago but chose not to add them.

Given that the amended complaint does not relate back to the original with respect to the additional individual defendants named in it, the Court must now consider whether the statute of limitations precludes drawing them into the litigation.

■ Last year, the Supreme Court held that the statute of limitations in 10(b) actions expires after the earlier of one year after the end of discovery or three years after the cause of action accrued. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, —— & n. 6, 111 S.Ct. 2773, 2780–2782 & n. 6, 115 L.Ed.2d 321 (citing 15 U.S.C. §§ 78i(e), 78r(c)). Moreover, because of the unusual bifurcated structure of this statute, the statute may not be equitably tolled. *Id.* at ——, 111 S.Ct. at 2782.

After *Lampf*, Congress enacted the Federal Deposit Insurance Corporation Improvement Act of 1991. Pub.L. No. 102–242, § 476, 105 Stat. 2236. This statute added a new Section 27A to the 1934 Act, stating that for all "actions" pending before the day the Court decided *Lampf*, the statute of limitations will be the same as that "provided by the laws applicable in the jurisdiction" before *Lampf*. 15 U.S.C. § 78aa–1(a).[2]

■ While some Circuits anticipated the Supreme Court's view on the statute of limitations expressed in *Lampf*, see, e.g., *Ceres Partners v. GEL Assocs.*, 918 F.2d 349 (2d Cir.1990), the Eleventh was not

---

**2.** The Eleventh Circuit has recently upheld the constitutionality of Section 27A of the Securities and Exchange Act of 1934. *Henderson v. Scientific–Atlanta, Inc.*, 971 F.2d 1567 (11th Cir.1992).

among them.[3] In the Eleventh Circuit, prior to *Lampf,* "[T]he statute of limitations for section 10(b) claims is the period that the forum state applies to the most closely analogous state claim." *Smith v. Duff & Phelps, Inc.,* 891 F.2d 1567, 1569–70 (11th Cir.1990); *accord Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1502 (11th Cir.1986). In Georgia, the two-year statute of limitations under Georgia's blue sky law, O.C.G.A. § 10–5–14, applies to all 10(b) and 10b–5 claims. *Henderson,* at 1569; *Friedlander,* 788 F.2d at 1509. Moreover, the 11th Circuit allowed the equitable tolling of the statute of limitations in 10(b) fraud actions until the plaintiff discovers the fraud, "provided that the plaintiff injured by the fraud 'remains in ignorance of it without any fault or want of diligence or care on his part.'" *Osterneck v. E.T. Barwick Industs.,* 825 F.2d 1521, 1535 (11th Cir.1987), *aff'd,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989).

█ Given that the Georgia statute of limitations applies, the reasoning in *Lampf* plainly does not. The *Lampf* Court noted that equitable tolling is the general rule, but drew an exception based on the specific wording of the federal statute of limitation, providing for an absolute ceiling of three years on the running of the statute. — U.S. at ——, 111 S.Ct. at 2782. Georgia's statute of limitations has no such provision.

In its amended complaint, the plaintiff alleges that HBO revealed that its fourth quarter earnings were far below previous expectations in a "flash" report on January 17, 1986. Prop.Am.Cmplt. at ¶ 33. The complaint alleges that a significant price drop in HBO stock followed this flash report. *Id.* at ¶ 34.

Plaintiff's cause of action probably accrued then, when she first could have discovered that HBO's stock value may have been inflated. In any event, it accrued no later than April 21, 1986, the day HBO announced it would discontinue discounting.

Plaintiff filed her action in the Eastern District of New York on October 2, 1986. At defendant's motion, the case was transferred to this Court some six months later, on April 7, 1987. Five months later, after briefing, this Court stayed discovery on substantive issues on September 22, 1987.

Six years have passed since the filing of the complaint. The Court is not inclined to allow an amendment at this late date unless there is a very good reason to. Plaintiff has encountered some obstacles in proceeding with this litigation, but the Court does not believe that the statute of limitations has tolled for over four years.

**C. The common law claims**

Defendant argues that because the plaintiff has admitted she did not read any of the allegedly misleading filings, she cannot prove that she relied on these statements. As reliance is an essential element of common law fraud and negligent misrepresentation, it argues, the plaintiff cannot possibly succeed on such theories.

█ The plaintiff admits that she did not herself read defendant's statements before buying stock, but contends that Georgia courts would adopt a "fraud on the market" theory. The United States Supreme Court adopted a fraud on the market theory in 10(b) actions in *Basic, Inc. v. Levinson,* 485 U.S. 224, 245–49, 108 S.Ct. 978, 990–992, 99 L.Ed.2d 194 (1988). This theory creates a rebuttable presumption that an investor who purchases securities relies on the market price of those securities as an indicator of their value. *See id.* at 245, 108 S.Ct. at 990. If a company makes misleading statements that affect this price, then the investor relied on those statements sufficiently to satisfy the requirements of 10(b). *Id.* at 247, 108 S.Ct. at 991.

The *Basic* Court based its presumption of reliance on "fairness, public policy, and probability, as well as judicial economy." *Id.* at 245, 108 S.Ct. at 990. The legislative

---

**3.** Defendant contends that this court should apply Second Circuit law, presumably because this case originated there. Again, the Court need

not decide this issue because it holds the statute of limitations has run under either Eleventh or Second Circuit law.

history of the 1934 Act reflected Congress's belief that "the market price [of a security] reflects as nearly as possible a just price." *Id.* at 246, 108 S.Ct. at 991 (citations omitted). The Court also cited empirical studies finding that the market price of shares traded on well-developed markets reflects material misrepresentations, and that most investors rely on this price. *Id.* at 246–47, 108 S.Ct. at 991. If courts do not use the fraud on the market theory's presumption, then class actions challenging violations of 10(b) would in effect be impossible. *See id.* at 229–30, 108 S.Ct. at 982.

■ Under Georgia common law, reliance is an essential element of negligent misrepresentation claims, *see Robert & Co. Assocs. v. Rhodes–Haverty Partnership,* 250 Ga. 680, 681 n. 1, 300 S.E.2d 503 n. 1 (1983) (citing Restatement (Second) of Torts § 552 (1972)), and of fraud claims, *see Clements v. Warner Robins Supply Co.,* 235 Ga. 612, 614, 221 S.E.2d 35 (1975). Georgia courts have always required proof of actual reliance, and have not adopted a fraud on the market theory that would allow a court to presume reliance.

Authorities are divided on whether plaintiffs making common law fraud claims may employ a fraud on the market theory. Some courts have decided to apply the reasoning in *Basic* to common law fraud claims pendent to 10b–5 actions, and allow plaintiffs to rely on fraud on the market theory. *E.g. In re Atlantic Fin. Sec. Litig.,* [1990–91 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 95,644 at 97,991, 1990 WL 171191 (W.D.Pa.1990); *Hurley v. FDIC,* 719 F.Supp. 27, 34 (D.Mass.1989); *Minpeco, S.A. v. Hunt,* 718 F.Supp. 168, 176 (S.D.N.Y.1989). Others have refused to do so. *E.g. In re Bank of Boston Corp. Sec. Litig.,* 762 F.Supp. 1525, 1536 (D.Mass. 1991) (declining to follow *Hurley* ); *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 379 (D.Del.1990); *Good v. Zenith Elec. Corp.,* 751 F.Supp. 1320 (N.D.Ill. 1990); *Keyser v. Commonwealth Nat'l Fin. Corp.,* 121 F.R.D. 642, 649 (M.D.Pa. 1988); *Mirkin v. Wasserman,* 6 Cal.App. 4th 414, 278 Cal.Rptr. 729, 746 (Cal.Ct.

App.), *review granted,* 282 Cal.Rptr. 840, 811 P.2d 1024 (1991); *Kahler v. E.F. Hutton Co.,* 558 So.2d 144, 145 (Fla.Dist.Ct. App.1990); *see also In re Ramtek Sec. Litig.,* [1990–91 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 95,814, at 98,910, 1991 WL 56067 (N.D.Cal.1991) (noting split among federal courts in California).

The *Mirkin* court discussed its reasons for refusing to adopt the fraud on the market theory in fraud actions in some detail. It observed that in *Basic,* Justice Blackmun's opinion expressly noted that 10b–5 actions "add to the protections provided investors by the common law." 278 Cal.Rptr. at 741 (citing *Basic,* 485 U.S. at 244 n. 22, 108 S.Ct. at 990 n. 22). Economists are not unanimous in believing that the market price of a stock reflects its value, or that a stock has some inherent "value" other than its price. *Id.* 278 Cal. Rptr. at 742–43 (citing *Basic,* 485 U.S. at 255–57, 108 S.Ct. at 995–96 (White, J., concurring and dissenting)). The *Mirkin* court concluded that the fraud on the market theory "eviscerates the reliance requirement" because in practice the defendant cannot rebut the presumption of reliance. *Id.* 278 Cal.Rptr. at 743.

In addition, applying the fraud on the market theory to common law claims could have wide-reaching repercussion. As one commentator has observed, "[T]aken to its logical extreme, FOTM [the fraud on the market theory] could swallow up a considerable amount of the common law of fraud." *See* Paul Mahoney, *Precaution Costs and the Law of Fraud in Impersonal Markets,* 78 Va.L.Rev. 623, 625 (1992). With any consumer commodity, the price serves to some extent as a proxy for its value. Would this suggest that the buyer of an automobile may sue for misrepresentations about its characteristics even if he never heard or read them? In the 10b–5 context, the fraud on the market theory can be confined to securities transactions, but common law fraud is an all-purpose remedy without natural divisions.

Given that the application of fraud on the market theory to common law claims is at best controversial, this court will not as-

sume the Georgia courts would apply it. Georgia law in the past has always required direct misrepresentation. This court is not the appropriate one to establish a new theory with such potentially broad ramifications. *Cf. Bank of Boston,* 762 F.Supp. at 1536 ("The law of the Commonwealth [of Massachusetts] that reliance is a constituent element of common law fraud being clear, a federal court has no authority to prognosticate what the law will be, but must follow what the law is.").

Accordingly, plaintiff's motion [# 51–1] to file a first amendment to its complaint is GRANTED IN PART to the extent it adds to its first claim for relief under Section 10(b) and Rule 10b–5, and DENIED IN PART to the extent it seeks relief under state common law theories. Plaintiff's motion [# 51–2] to add four named individual defendants is hereby DENIED. Plaintiff's motion [# 51–2] to file under seal its motions to amend and add parties and its memorandum in support of them is GRANTED. Plaintiff's motion to compel testimony [# 54–1] is based on plaintiff's motion to amend its 10b–5 claim. Accordingly, this motion is GRANTED.

SO ORDERED.