BOND OPPORTUNITY FUND II,
LLC and Steven Gidumal

v.

Michael T. HEFFERNAN, H. Loy
Anderson, Abraham D. Gosman, Gary
S. Gillheeney, Frederick R. Leathers,
Lisa P. McAlister, Eric Moskow, M.D.,
and Stephen E. Ronai.

C.A. No. 00–609–T.

United States District Court,
D. Rhode Island.

Oct. 22, 2004.

Thomas S. McNamara, Indik & McNamara, P.C., Philadelphia, PA, William A. Jacobson, Providence, RI, for plaintiffs.

John F. Dolan, Anthony R. Leone, Rice Dolan & Kershaw, Providence, RI, Lisa M. Cameron, John F. Batter, III, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Joseph V. Cavanagh, Jr., Staci L. Kolb, Blish & Cavanagh, Thomas C. Angelone, Hodosh, Spinella & Angelone, Providence, RI, Sanford F. Remz, Esq., Yurko & Salvesen, P.C., Boston, MA, Robert M. Duffy, Esq., Christine K. Bush, Duffy Sweeney & Scott, Ltd., Providence, RI, Marjorie S. Cooke, Edward S. Cheng, Esq., Cooke, Clancy & Gruenthal, LLP, Boston, MA, Richard Daniel Prentiss,

Robin–Lee Main, Holland & Knight LLP, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

TORRES, Chief Judge.

Bond Opportunity Fund II, Ltd. and Steven Gidumal (the "plaintiffs") purchased convertible debentures issued by Innovative Clinical Solutions, Ltd. ("ICS"). They brought this action against various directors and/or officers of ICS, charging violations of the Securities Exchange Act of 1934 ("SEA"); Securities Exchange Commission ("SEC") Rule 10b–5; and the Rhode Island Uniform Securities Act, as well as common law fraud.

The plaintiffs have moved for leave to file a Second Amended Complaint. The principal issues are whether the proposed amendment is timely; and, if so, whether it would be futile. For the reasons hereinafter stated, the motion to amend is granted in part and denied in part.

### Background

Most of the background facts relevant to the plaintiffs' motion to amend are set forth in the Court's Memorandum & Order dated November 14, 2002 (hereinafter, "Memo & Order").

In their memorandum, the plaintiffs do not clearly or specifically explain the nature of their proposed amendment or the reasons why it should be permitted. Rather, they leave it to the Court to parse through the proposed Second Amended Complaint in order to determine whether their motion to amend should be granted. The plaintiffs describe the proposed amendment generally as being intended *inter alia:*

(1) to "drop" Abraham D. Gosman as a defendant because he has filed a bankruptcy petition (Pl. Mem. Supp. Mot. Am., at 1);

(2) to "amplify" the facts relating to claims that the defendants "made material misrepresentations concerning the pretax income of the businesses . . . designated for sale" and that they "made misleading representations in its Schedule 14–A, filed on January 12, 1999, concerning the nature, terms and status of the advances made to unidentified shareholders in 1998." (Pl. Mem. in Support of Mot. to Am., at 2); and

(3) to "further support" the claim of "misrepresentations concerning the $10.9 million in advances made by ICS to Chancellor Development Corp.," a company owned by Gosman, by adding an allegation that, when those advances were made, defendant Heffernan "owed an undisclosed $1.5 million personal obligation to Gosman." (Pl. Mem. in Support of Mot. to Am., at 2).

The defendants argue that the motion should be denied on the grounds that the proposed amendment is both "futile and untimely." (Def. Heffernan's Mem. in Obj., at 1). They do not address the aspect of the proposed amendment that would dismiss the claims against Gosman.

### Standard re Motion to Amend

In the First Circuit, the dismissal of a complaint, *in toto* without leave to amend, is a final judgment that precludes leave to amend unless the plaintiff first obtains relief from the judgment pursuant to Fed. R.Civ.P. 59 or 60. *See Acevedo–Villalobos v. Hernandez,* 22 F.3d 384, 388–89 (1st Cir.1994) (dismissal of a complaint in its entirety bars the trial court from considering a motion for leave to amend because it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' ") (quoting *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373–374, 101 S.Ct. 669, 66

L.Ed.2d 571 (1981)); *Mirpuri v. ACT Manufacturing, Inc.,* 212 F.3d 624, 629 (1st Cir.2000) (district court lacked jurisdiction to permit filing of amended complaint after memorandum decision dismissed entire complaint without leave to amend where such amended complaint alleged "several new facts ...". However, an order dismissing some, but not all, of a plaintiff's claims does not constitute a final judgment barring amendment even if the amendment seeks to revive a claim that previously was dismissed. *See Acevedo–Villalobos,* 22 F.3d at 389 (holding that the court must dismiss the entire complaint without expressly granting leave to amend in order to constitute a "final decision"); *Union Carbide Corp. v. Siemens Westinghouse Power Corp.,* No. 99 Civ. 12003(LMM), 2002 WL 31387269 at *1–2 (S.D.N.Y. October 23, 2002) (granting plaintiff's motion for leave to file a second amended complaint re-pleading claims previously dismissed by the court).

Fed.R.Civ.P. 15(a) requires that, after a responsive pleading has been served, a complaint may not be amended without leave of the court. However, the Rule provides that "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

In *Foman,* the Supreme Court identified some of the reasons for denying a motion to amend. Those reasons include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. at 182, 83 S.Ct. 227.

The *Foman* factors are especially applicable in cases where the proposed amendment seeks to revive a previously dismissed claim. *See Hester v. Int'l Union of Operating Eng'rs,* 941 F.2d 1574, 1978–9 (11th Cir.1991) (affirming denial of leave to resurrect previously dismissed claim where plaintiff waited two years through two appeals before moving to amend); *Union Carbide,* 2002 WL 31387269 at *2 (granting leave to amend and to reinstate previously dismissed claims in light of "new facts"); *Litman v. George Mason Univ.,* 156 F.Supp.2d 579, 588 (E.D.Va. 2001) (denying amendment that would reinstate § 1983 claims with respect to which summary judgment had been granted two years earlier on grounds that amendment would result in prejudice and undue delay); *DeLuca v. Winer Industries, Inc.,* 857 F.Supp. 606, 608 (N.D.Ill.1994) (granting leave to amend and reinstate claims previously dismissed on grounds that extension of discovery deadline would remedy any prejudice to defendants and amended complaint would not inject radically new issues); *State of New York v. Cedar Park Concrete Corp.,* 741 F.Supp. 494, 497 (S.D.N.Y.1990) (denying leave to amend and reinstate damages claims on ground that counsel's alleged misunderstanding of applicable law did not excuse a two-year delay in filing motion).

*Analysis*

**I. The Claims Against Gosman**

Although the defendants have objected to the motion to amend, they have failed to advance any reason why the plaintiffs should not be allowed to drop the claims against Gosman. Since Gosman's bankruptcy automatically stays any claims against him; and, since elimination of those claims would not result in any discernible prejudice to the defendants, the motion to amend is granted to the extent that the proposed second amended complaint drops any claims against Gosman.

**II. "Amplification" of the Facts**

The plaintiffs seek to "amplify" the facts relating to the claims asserted in their

Amended Complaint, that various filings made by ICS contained false and/or misleading statements.

### A. *The 1999 2Q 10–Q and 3Q 10–Q*

The Amended Complaint alleged that the 1999 2Q 10–Q and 3Q 10–Q misrepresented the income earned by the businesses being divested by ICS. This Court dismissed that claim for reasons set forth in its previous Memorandum and Order. Memo & Order at 7–9.

■ The plaintiffs' proposed Second Amended Complaint does not allege any significant new facts in support of that claim. Instead, the plaintiffs attempt to rehash their argument that, under GAAP, the facts previously alleged are sufficient to support those claims. That argument is no more persuasive the second time around; and therefore, to the extent that the motion to amend seeks to revive those claims, it is denied.

### B. *The 1999 10–K*

In their amended complaint, the plaintiffs claimed that ICS's 1999 10–K also misrepresented the income earned by the divested businesses. That claim, too, was dismissed. Memo & Order at 7–9.

The plaintiffs, now, seek to "revive" their claim with respect to the 1999 10–K by rehashing the same arguments that this Court previously rejected and by alleging that the 1999 10–K was misleading because it failed to disclose that, at the time that ICS agreed to advance $10.9 million to Chancellor Corporation, Heffernan, ICS's CEO, owed Gosman, Chancellor's principal shareholder, $1.5 million.[1]

To the extent that the attempt to revive the claim with respect to the 1999 10–K is

based on allegations of misrepresentations regarding the income earned by the divested businesses, it is no more than a rehash of the argument that was previously rejected. Therefore, in that respect the motion to amend is denied.

Whether the proposed amendment should be allowed in order to assert a claim that the 1999 10–K was misleading because it failed to disclose the Gosman–Heffernan loan turns on whether the proposed amendment is timely and whether it would be futile. Those questions are addressed in Sections III and IV.

### C. *Schedule 14–A*

■ The Amended Complaint alleged that ICS's Schedule 14–A was misleading because it stated that a previous $3.1 million loan from ICS to Gosman had been "repaid in full." The plaintiffs contended that this statement amounted to a representation that no future advances would be made to Gosman when, unbeknownst to the plaintiffs, ICS allegedly had made a commitment to advance up to $10.9 million to Chancellor pursuant to a "revolving credit" arrangement. Amended Complaint ¶ 34–35. This Court dismissed that claim. See, Memo & Order at 19. Although the reasons for dismissal were not explicitly stated, dismissal was based on the determination that the statement that Gosman had repaid his previous loan could not reasonably be construed as a representation that no further advances ever would be made to him or any of his companies.

In their proposed Second Amended Complaint, the plaintiffs seek to "revive" their claim with respect to Schedule 14–A by repeating essentially the same arguments and by, now, alleging that Schedule

---

**1.** The 1999 10–K disclosed that the advance had been made but did not refer to any in-

debtedness by Heffernan to Gosman.

14–A was misleading because it failed to disclose the Gosman–Heffernan loan.

Once again, to the extent that the proposed amendment simply rehashes arguments that previously were rejected, it is denied and whether it will be allowed for the purpose of alleging a failure to disclose the Gosman–Heffernan loan depends on the timeliness of the proposed amendment and whether it would be futile. *See* Sections III and IV.

### D. *The 2003 3Q 10–Q*

The Amended Complaint alleges that ICS's 10–Q for the third quarter of 2000 (the 2000 3Q 10–Q) filed on December 15, 1999, was misleading on the ground that it failed to disclose material facts regarding the stock pledged by Gosman as security for the $10.9 million loan. This Court denied a motion to dismiss that claim because it presented factual questions not capable of resolution by way of a motion to dismiss.

The proposed Second Amended Complaint seeks to "buttress" that claim by alleging that the 2003 3Q 10–Q also was misleading because it failed to disclose the Gosman–Heffernan loan. Once again, whether the proposed amendment should be permitted depends on whether it is timely and whether it would be futile. Those issues are addressed in Sections III and IV.

### E. *The 2000 10–K*

■ The Amended Complaint alleged that ICS's 10–K for FY 2000 was misleading because it described a $448,000 loan to Moskow as a "non-recourse" loan when, in fact, it was not. The Court rejected that contention because there was "no basis for inferring that the plaintiffs were harmed by the alleged misrepresentation." Memo & Order, at 17. However, the Court did not dismiss the claim because the plaintiffs also alleged that the defendants fraudulently failed to disclose that Moskow had sold some of the stock that he previously pledged as security for the loan. Memo & Order, at 18. Upon further review, it is not clear why the failure to make such a disclosure was material in light of the fact that the plaintiffs do not allege that they purchased any debentures after June 1, 2000, when the 2000 10–K was filed.

In any event, the plaintiffs offer little explanation as to how the proposed amendment affects the claim with respect to the 2000 10–K or why it should be granted. Since examination of the proposed amendment is equally unenlightening, the motion to amend is denied with respect to that claim.

### III. *Timeliness of Claims re 1999 10–K, Schedule 14–A, 2000 3Q 10–Q and 2000 10–K*

The defendants argue that any claims based on allegations that they failed to disclose the Gosman–Heffernan loan are barred by the statute of limitations and are otherwise untimely because the plaintiffs "unduly delayed" in moving to amend. Def. Mem. Supp. Mot. Am. at 2, 8.

### A. *Statute of Limitations*

■ Claims of securities laws violations made pursuant to § 10(b) or Rule 10b–5 must be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis and Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (superseded by statute on other grounds, Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L.

No.102–242 § 476).[2] The one-year limitations period begins to run when the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the violation. *Young v. Lepone,* 305 F.3d 1, 9–10 (1st Cir.2002); *Cooperativa de Ahorro y Credito Aguada v. Kidder Peabody & Co.,* 129 F.3d 222, 224 (1st Cir.1997).

In opposing the instant motion to amend, the defendants did not brief their statute of limitations argument. They briefed that argument only in connection with their previous motion to dismiss the amended complaint. At that time, the defendants argued that the claim that the 1999 10–K omitted material facts regarding the $10.9 million Chancellor advance was time barred because the facts in question were contained in the 2000 3Q/10–Q filed on December 15, 1999 and the plaintiffs did not bring suit until December 15, 2000, more than a year later. However, that argument has no bearing on the motion to amend because the amended claims that the plaintiffs now seek to assert are that the 1999 10–K, the Schedule 14–A, the 2000 3Q/10–Q and the 2000 10–K were misleading because they failed to disclose the Gosman–Heffernan loan.

The defendants did address the timeliness of the proposed amended claims during oral argument but their argument was rather confusing. The gist of their argument appears to be that the plaintiffs, by their own admission, learned of the Gosman–Heffernan loan on September 21, 2001, but did not file their motion to amend until February 27, 2003, more than a year later and more than three years after the alleged violation. Tr. Hr'g., August 14, 2003, at 36–38. The plaintiffs contend that, nevertheless, the proposed amendment is within the period of limitations because the proposed amendments relate back to the claims asserted in their original and amended complaints. Moreover, the plaintiffs notified the Court and the defendants of their intent to amend on December 5, 2001, less than three months after they learned of the Gosman–Heffernan loan.

■ A claim asserted in an amended pleading filed after the Statute of Limitations has expired is timely if it relates back to a pleading filed before expiration. Therefore, the amended claims based on non-disclosure of the Gosman–Heffernan loan are within both the one-year and three-year periods of limitation if they relate back to claims asserted in the original and/or amended complaints. *See, e.g., Lind v. Vanguard Offset Printers, Inc.,* 857 F.Supp. 1060, 1068 (S.D.N.Y.1994)(amendments in second amended complaint related back to timely filed first amended complaint which asserted federal securities claims not contained in original complaint); *Wells v. HBO & Co.,* 813 F.Supp. 1561, 1565 (N.D.Ga.1992) (proposed amended complaint arose from the same transaction as the original complaint).

■ Under Fed.R.Civ.P. 15(c)(2), an amendment relates back when the claim asserted in the amended pleading "arose out of the conduct, transaction or occurrence set forth in the original pleading." *In re Xchange Inc. Securities Litigation,* No. CIV.A.00–10322–RWZ, 2002 WL 1969661 at *4 (D.Mass. Aug. 26, 2002); *In re National Media Securities Litigation,* No. Civ.A. 93–2977, 1994 WL 649261 at *2 (E.D.Pa. Nov. 18, 1994). The rationale for that rule is that "once a party has been notified of the litigation concerning a par-

---

**2.** The Supreme Court established the 1 yr/3 yr limitations period in *Lampf* and made it retroactive to pending cases not fully adjudicated. Congress responded with legislation making the limitations period prospective, only.

ticular occurrence, she has received all the notice that statutes of limitations require." *Wells v. HBO & Co.,* 813 F.Supp. at 1565 (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 149 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)(per curiam)). Consequently, the focus is on whether the facts alleged in the original pleading provide adequate notice of the matters raised in the amended pleading so that the defendant is not unfairly prejudiced. *Lind v. Vanguard Offset Printers, Inc.,* 857 F.Supp. at 1068; *In re Chaus Securities Litigation,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992).

While the rule is easy to state, it is often difficult to apply; and, in marginal cases, a very fact specific inquiry is required. *Wells,* 813 F.Supp. at 1565. In securities fraud cases, courts have held that the test is whether the new allegations relate to the same statements and/or documents referenced in the original complaint. *Xchange,* 2002 WL 1969661 at *4 (new claims in amended complaint do not relate back where they relate to registration statements for IPO or Second Offering not mentioned in the original complaint); *In re National Media,* 1994 WL 649261 at *2 (amended complaint relates back where new allegations allege misrepresentations relating to the same product line in the same public statements); *Lind,* 857 F.Supp. at 1068–69 (second amended complaint relates back because both original and new allegations all involve misrepresentations regarding a stock purchase agreement); *Wells,* 813 F.Supp. at 1566 (amended complaint relates back when based on the same misleading filings and statements as the original complaint); *see also Fry v. UAL Corp.,* No. 90 C 0999, 1992 WL 177086 at *16 (N.D.Ill. July 23, 1992) (amended complaint relates back where both amended and original complaint relate to the same dividend distribution announcement).

In this case, although the proposed amendment sets forth additional reasons for the plaintiffs' claims that the 1999 10–K, the Schedule 14–A, the 2000 3Q/10–Q and the 2000 10–K were misleading, the new allegations relate to the same filings referenced in the original and amended complaints and they do not alter the claims that those filings omitted material facts.

Moreover, it is difficult to see how the defendants would be unfairly prejudiced if the amendment is allowed. It is clear that Gosman and Heffernan have known of the Gosman–Heffernan loan since it was made and there is no indication that the other defendants were unaware of the loan or that relevant evidence regarding the alleged loan is, now, unavailable to them.

### B. *Undue Delay*

The defendants argue that, even if the proposed amendment is not barred by the statute of limitations, the motion to amend should be denied as untimely, based on the factors identified in *Foman* because the plaintiffs have not offered a "valid reason for having waited so long to file [their] motion." Def. Mem. Obj. Mot. Am., at 8 (quoting *Grant v. News Group Boston, Inc.,* 55 F.3d 1, 6 (1st Cir.1995)). The defendants characterize the plaintiffs' delay in waiting to file their motion to amend until after the motion to dismiss the Amended Complaint was decided as "strategic maneuvering" that does not justify the delay. *Id.* at 9. The plaintiffs explain that delay as a justifiable attempt to "avoid complicating matters or delaying the Court's consideration and disposition of Defendants' motions to dismiss." Pl. Mem. Supp. Mot. Am., at 3–4.

In determining whether the plaintiffs unduly delayed in filing their motion to amend, the focus, once again, is on whether allowing the amendment would

unfairly prejudice the defendants. *See Quaker State Oil Refining Corp. v. Garrity Oil Co. Inc.*, 884 F.2d 1510, 1517–18 (1st Cir.1989); *Melvin v. Brodeur*, No. CIV.97–192–SD, 2000 WL 36951 at *1 (D.N.H., Jan. 19, 1999); *McMillan v. Mass. Society for the Prevention of Cruelty to Animals*, 168 F.R.D. 94, 98 (D.Mass.1995).

 One of the factors to be considered is when the motion to amend is filed in relation to the discovery closure date or dispositive motions filed by the defendant. *Quaker State*, 884 F.2d at 1518 (motion denied where only two months remained in an already extended discovery period and a great deal of discovery had taken place); *Larocca v. Borden, Inc.*, 276 F.3d 22, 32 (1st Cir.2002); *Augusta News Co. v. Hudson News Co.*, 269 F.3d 41, 46 (1st Cir. 2001); *McMillan* at 98 (denying motion to amend filed more than one month after motion for summary judgment). In this case, no discovery closure date has been set, yet. Therefore, the defendants will have ample opportunity to conduct any necessary discovery with respect to the amended claim regarding the Gosman–Heffernan loan.

Nor does it appear that the plaintiffs' delay in actually filing their motion to amend was unreasonable under the circumstances. Since the Court's decision on the motions to dismiss could have affected the manner in which the amendment was framed, there was some justification for waiting until the motion to dismiss was decided. Furthermore, as already noted, the plaintiffs made their intent to amend known promptly after they claim to have learned of the Gosman–Heffernan loan and before the motion to dismiss the Amended Complaint was decided.

Finally, as previously stated, it does not appear that the delay has otherwise compromised the defendants' ability to defend against the amended claims.

## IV. *Futility*

The defendants argue that any amendment alleging failure to disclose the Gosman–Heffernan loan would be futile for four reasons:

1. The amendment seeks to assert what, in essence, is a breach of fiduciary duty claim which this Court already has said that the plaintiffs lack standing to make.

2. The assertion that the Gosman–Heffernan loan was made and forgiven as a kickback is factually incorrect.

3. ICS did not have any duty to disclose the Gosman–Heffernan loan because a registrant has no duty to disclose transactions to which the registrant is not a party.

4. Failure to disclose the Gosman–Heffernan loan does not make the disclosure regarding ICS's $10.9M advance to Chancellor misleading.

### A. *The Futility Standard*

 A motion to amend a complaint may be denied as futile if the "complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir.1996). In determining whether a proposed amendment would be futile, a court applies the same standard as it would apply to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Id.* The court must accept all the well-pleaded factual allegations as true and must draw all reasonable inferences favorable to the plaintiff but need not credit bald assertions or legal conclusions. *Id.* at 628. Thus, the motion should be granted only when it is clear that the plaintiff would not be able prove any set of facts that would entitle the plaintiff to relief. *Howard v. State of*

*Rhode Island,* C.A. No. 96–064T, 1996 WL 33418794 at *2 (D.R.I. December 31, 1996).

### B. *Duty to Disclose*

■ The failure to disclose information supports a claim for securities fraud only if there was a duty to disclose the information. *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 26 (1st Cir.1987); *Kafenbaum v. GTECH Holdings Corp.,* 217 F.Supp.2d 238, 248 (D.R.I.2002).

■ A duty to disclose does not arise merely because information may be of interest to investors. *Colby v. Hologic, Inc.,* 817 F.Supp. 204, 213 (D.Mass.1993). A duty to disclose arises when:

1. An insider trades securities on the basis of material, non-public information; or

2. A statute or regulation requires disclosure; or

3. The company has previously made a statement of material fact that is false, inaccurate, incomplete or misleading in light of the undisclosed information.

*Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1202 n. 3 (1st Cir.1996) (superseded on other grounds by statute); *Roeder,* 814 F.2d at 26, 27.

### 1. *Breach of Fiduciary Duty*

■ It is true, as the defendants argue, that § 10(b)(5) does not necessarily require disclosure of any fact that might reveal a possible breach of fiduciary duty. However, that does not mean that otherwise material facts are exempt from disclosure simply because they may provide a basis for a breach of fiduciary duty claim. Put another way, the two claims are not mutually exclusive, and omission of material facts may give rise to a securities fraud claim even though those facts also may give rise to a breach of fiduciary claim. *See*

*Estate of Soler v. Rodriguez,* 63 F.3d 45, 56 (1st Cir.1995).

■ Therefore, this Court rejects the defendants' argument that the proposed amendment is futile because "it is a claim for a breach of fiduciary duty, not securities fraud." Pl. Mem. in Support of Mot. to Am., at 7.

### 2. *Factual Incorrectness*

■ There is no need for a lengthy discussion with respect to the defendants' argument that the proposed amendment is futile because it rests on factual misstatements regarding the Gosman–Heffernan loan. As already noted, in deciding whether a proposed amendment would be futile, a court applies the same standard that governs motions to dismiss made pursuant to Rule 12(b)(6). Thus, the allegations in the proposed Second Amended Complaint must be accepted as true and viewed in the light most favorable to the plaintiffs, and the motion to amend should be denied only if it is clear that the plaintiffs could not prove facts that would entitle them to relief. *Howard,* at 1996 WL 33418794 *2. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Applying that generous standard, it is impossible to say that the proposed amendment would be futile. *See Glassman,* 90 F.3d at 623, 628.

### 3. *Regulation S–K*

The plaintiffs contend that Item 404 of Regulation S–K imposed a duty to disclose the Gosman–Heffernan loan. The defendants argue that the plaintiffs' reliance on Regulation S–K is misplaced because Item 404 requires disclosure only of transactions between a "registrant" and a related party and that here, ICS (i.e. the "registrant") was not a party to the Gosman–Heffernan loan transaction.

Regulation S–K deals with the disclosures required under both the 1933 and 1934 Securities Acts. It was adopted by the SEC in order to ease the burden of duplicative disclosures and to help define what information is material and when and how it should be disclosed. Thomas Lee Hazen, *Treatise on Law of Securities Regulation* § 9.4[1]-[2] (4th ed.2002). Regulation S–K lists the information that must be disclosed on the various forms and provides instructions explaining the disclosure requirements. Hazen, *supra* § 9.4[3].

Item 404(a) of Regulation S–K deals with disclosure of transactions in which directors or officers of the registrant have a material interest. It provides:

> *Transactions with management and others.* Describe briefly any transactions ... to which the registrant or any of its subsidiaries was or is to be a party, in which the amount involved exceeds $60,000 *and* in which any of the following persons had, or will have, a direct or indirect material interest, naming such person and indicating the person's relationship to the registrant ...

17 C.F.R. § 229.404(a) (emphasis added) Item 404(a) includes among the persons whose interest must be disclosed: "(1) [a]ny director or officer of the registrant ..." 17 C.F.R. § 229.404(a)(1).

The plaintiffs argue that Heffernan had a material interest in the Chancellor loan "because Heffernan, by virtue of the Heffernan loan had a financial relationship with Gosman, an 'entity' that engaged in the [Chancellor] transaction with ICS ..." Pl. Reply Mem. at 3. They rely on Instruction # 8 which provides:

> A person who has a position or relationship with ... [an] entity that engages in a transaction with the registrant ... may have an indirect interest in such transaction by reason of such position or relationship ... 17 C.F.R. § 229.404.

■ The plaintiffs' argument ignores the fact that Item 404(a) requires that a transaction involving a director or officer be reported only if the director or officer of the registrant has a material interest in the transaction *and* the registrant is a party to the transaction. Here, one of the preconditions triggering the disclosure requirement under Item 404(a) is absent because ICS (i.e. the "registrant") was not a party to the Gosman–Heffernan loan.

In short, while Heffernan arguably may have breached a fiduciary duty if he played a role in approving the Chancellor advance, Regulation S–K did not require disclosure of the Gosman–Heffernan loan because ICS was not a party to that transaction.

### 4. Whether Non–Disclosure Was Misleading

The plaintiffs claim that statements in the 1999 10–K and 2000 3Q 10–Q describing the $10.9 million advance to Chancellor were misleading because they impliedly represented that the Chancellor advance was a bona fide loan authorized by the good faith judgment of disinterested directors and that Heffernan's indebtedness to Gosman supports an inference that it was not. The defendants argue that failure to disclose the Gosman–Heffernan loan did not make the statements regarding the Chancellor advance misleading; and that, therefore, there was no duty to disclose that loan.

■ When a registrant makes a statement of material fact, whether voluntary or required, Rule 10b–5 requires disclosure of any information which, if omitted, would make the statement false, incomplete or misleading. *Gross v. Summa Four, Inc.*, 93 F.3d 987, 992 (1st Cir.1996)(superseded by statute on other

grounds).[3] As already noted, that does not mean that a registrant must disclose every fact that may be of interest to a potential investor. A registrant is required to disclose only those facts that are necessary to prevent the statement made from being "so incomplete so as to mislead." *Id.* (citations omitted). Omission of a fact may be misleading even though a governing statute and/or regulations do not expressly require disclosure. *Gross,* 93 F.3d at 992; *Roeder,* 814 F.2d at 26–27; *Simon v. American Power Conversion Corp.,* 945 F.Supp. 416, 424 (D.R.I.1996)

Whether a statement is material and, therefore, triggers a duty to disclose additional facts that may be required to make the statement accurate and complete, turns on the significance that a reasonable investor would attach to the statement and the omitted facts. *Basic Inc. v. Levinson,* 485 U.S. 224, 240, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 445, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). *See Simon v. APC,* 945 F.Supp. at 427. A statement is material and the omission of a fact relating to the statement may make the statement misleading if there is a substantial likelihood that a reasonable investor would consider the statement and the omitted fact important in making investment decisions. *TSC Industries,* 426 U.S. at 449, 96 S.Ct. 2126; *Roeder,* 814 F.2d at 25.

Whether a statement is material and whether the omission of additional information renders the statement misleading ordinarily are questions of fact and should be decided as a matter of law only where the alleged misstatements or omissions "are so patently inconsequential to a reasonable [investor] that reasonable minds could not differ in the question of their importance." *Kafenbaum,* 217 F.Supp.2d. at 248, 249; *see Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 641 (3rd Cir.1989)("Only when the disclosures or omissions are so clearly unimportant that reasonable minds could not differ should the alternate issue of materiality be decided as a matter of law."); *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1305–1306 (C.D.Cal. 1996)("[A] complaint may not be properly dismissed pursuant to Rule 12(b)(6) on the grounds that the alleged misstatements or omissions are not material unless they are 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.' ") (citations omitted). *Roeder,* 814 F.2d. at 25 (determining whether a statement or omitted fact is material "requires delicate assessments of the inferences a reasonable [investor] would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.")

Here, based on the pleadings, alone, this Court is unable to say that the Gosman–Heffernan loan was "so patently inconsequential" that reasonable investors would not have considered them important in making their investment decisions. *Kafenbaum* at 249. *See also Craftmatic,* 890 F.2d. at 641. While the plaintiffs ultimately may have to show, among other things, that Heffernan played a role in the advance to Chancellor and a likelihood that he was influenced by his dealings with Gosman; those are fact-laden questions that can only be resolved by the presentation of evidence. The amount of the advance to Chancellor, the fact that Chancel-

---

**3.** Private Security Litigation Reform Act, 15 U.S.C. § 78n–4 (imposes requirement that pleadings raise a "strong" inference of scienter rather than a merely "reasonable" inference of scienter.) *Greebel v. FTP Software Inc.,* 194 F.3d 185 (1st Cir.1999).

lor apparently defaulted, and the amount of the Gosman–Heffernan loan all suggest that the plaintiffs should be afforded an opportunity to present evidence to prove their case.[4]

### Conclusion

For all of the foregoing reasons, the motion to amend is granted with respect to the claims that the 1999 10–K, Schedule 14–A, and the 2000 3Q/10–Q were misleading because they failed to disclose the $1.5 million loan from Gosman to Heffernan. In all other respects, the motion to amend is denied.

The issues remaining in this case are as follows:

1. Whether ICS's 1999 10–K filed on April 30, 1999 and/or Schedule 14–A filed on January 12, 1999 were misleading because they failed to disclose the $1.5 million Gosman–Heffernan loan.

2. Whether ICS's 2000 3Q/10–Q was misleading on the grounds that it misrepresented Gosman's security for the $10.9 million advance and failed to disclose the $1.5 million Gosman to Heffernan loan.

3. Whether ICS's 2000 10–K was misleading because it failed to disclose that Moskow sold some of the stock he pledged as security for a loan.

The plaintiffs shall file a Second Amended Complaint consistent with this Order within 20 days. No further amendments will be allowed.

IT IS SO ORDERED,

---

**4.** The plaintiffs also argue that disclosure was required by those provisions of GAAP "pertaining to related party transactions." Pls.'s Am. Compl. ¶ 80. Because this Court has found that a duty to disclose the Gosman–Heffernan loan existed under Section 10(b) and Rule 10b–5, there is no need to consider that argument.